UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VANESSA SOTO GIMENEZ,

                    Petitioner,

        v.

JULIO HERNANDEZ, *et al.*,

                    Respondents.

CASE NO. 2:26-cv-00966-GJL

ORDER GRANTING FEDERAL
HABEAS PETITION IN PART

Petitioner Vanessa Soto Gimenez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On March 21, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention. *Id.* Respondents to the Petition include Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), U.S. Department of Homeland Security ("DHS"), Markwayne Mullin (DHS Secretary), and Todd Blanche (acting U.S. Attorney General) (collectively "Respondents").[1] The Petition has been fully briefed. Dkts. 1, 6,

---

[1] Respondents Mullin and Blanche have been substituted for the previously named Respondents Kristi Noem and Pamela Bondi, respectively.

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 1

8. The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 4.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition **IN PART** and **ORDERS** Petitioner's conditional release following the provision of a prompt, post-deprivation bond hearing as set forth in the conclusion below.

## I.      FACTUAL BACKGROUND

In this matter, Petitioner challenges the legality of bond determinations made by an Immigration Judge ("IJ"). The parties generally agree as to the underlying facts of the case with one notable exception. Specifically, Petitioner alleges the IJ initially denied bond without finding that Petitioner posed a risk of flight or of danger to the community. Dkt. 1 at ¶ 27. Respondents, on the other hand, assert that the IJ found that Petitioner was a flight risk and a danger to the community. Dkt. 6 at 4. Based on its own review of the parties' allegations and evidence, the Court adopts the following facts.

To begin, Petitioner is correct that there is no direct record of the IJ's reasoning for denying bond. Instead, the IJ issued their bond denial decision on a checkbox order with no articulated reasoning or application of law to the facts of Petitioner's case. Dkt. 1-1 at 62–63. Although the IJ's written order denying bond contained no articulated finding of dangerousness or of flight risk, Petitioner's motion seeking reconsideration of that decision acknowledged the IJ denied bond "based on concerns regarding danger to the community." Dkt. 1-1 at 68, 80–81. Petitioner conceded within her motion that the factual predicate for the IJ's finding was a then-pending misdemeanor charge for domestic battery. *Id.* at 69, 80–81.

Regardless of whether these representations reflect an actual finding by the IJ or Petitioner's speculation regarding the IJ's decision, the Court assumes *arguendo* the IJ's initial

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 2

bond denial decision was predicated upon a finding of dangerousness. However, the Court cannot discern any additional evidence suggesting the IJ otherwise assessed Petitioner to be a flight risk. As such, the Court does not similarly assume that the IJ found Petitioner was a flight risk or that any bond determination was made on that basis.

**A.      Background and Immigration History**

Petitioner is a 39-year-old native and citizen of Venezuela. Dkt. 1 at ¶ 13; Dkt. 7 at ¶ 3. She states that she entered the United States in Miami, Florida, on November 16, 2016, on a B-2 visitor visa and remained beyond the period of authorized stay. Dkt. 1 at ¶ 14; Dkt. 7 at ¶ 4.

On July 20, 2017, Petitioner's husband filed an application for asylum (Form I-589), on which Petitioner was included as a derivative beneficiary. Dkt. 1 at ¶ 15. Once her immigration case transferred to the Tacoma Immigration Court's jurisdiction, Petitioner filed a new asylum application (Form I-589) in her own name. Dkt. 1 at ¶ 25.

**B.      Family and Personal Circumstances**

Petitioner has resided in Florida since her arrival to the United States, where she maintains a stable residence. Dkt. 1 at ¶ 16. Petitioner has two United States citizen daughters, ages seven and nine, and prior to her arrest she served as their primary caregiver and primary source of emotional support. Dkt. 1 at ¶ 17. Petitioner's brother, also a United States citizen, resides near her in Gainesville, Florida. Dkt. 1 at ¶ 18. Petitioner was granted employment authorization valid through May 14, 2029, and owns and operates her own business in Florida. Dkt. 1 ¶ 15, 16

Petitioner is currently involved in divorce and custody proceedings with her husband, whom she alleges has been physically and emotionally abusive toward her and their children, including acts of violence and threats to kill her. Dkt. 1 at ¶¶ 1, 20; *see also* Dkt. 1-1 at 113. Petitioner is also involved in ongoing family court proceedings concerning custody and care of

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 3

her children, which require her continued presence in the United States. Dkt. 1 at ¶ 26; Dkt. 1-1 at 113. Petitioner has never been convicted of a criminal offense, she does not have a history of violent conduct, and she has never failed to appear for any immigration appointment, filing obligation, or court appearance. Dkt. 1 at ¶¶ 21, 34. 35.

**C.      Circumstances of Arrest and Immigration Detention**

On or around November 30, 2025, Petitioner was arrested in Florida on a misdemeanor domestic battery charge. Dkt. 1 at ¶ 21; Dkt. 7 at ¶ 5. This charge was subsequently dismissed for lack of evidence on January 30, 2026, and no conviction, adjudication, or finding of guilt resulted. Dkt. 1 at ¶¶ 21, 28; Dkt. 1-1 at 75.

In December 2025, Enforcement and Removal Operations ("ERO") encountered Petitioner at a county jail in Florida, detained her, and transferred her to the ERO office in Jacksonville, Florida, for processing. Dkt. 7 at ¶ 6; Dkt. 1 at ¶ 22. Petitioner was served with a Notice to Appear charging her as removable under 8 U.S.C. § 1227(a)(1)(B). Dkt. 7 ¶ 7; Dkt. 1 ¶ 23. Petitioner was then shuffled between numerous detention facilities until she was ultimately transferred to NWIPC on December 23, 2025, where she remains detained. Dkt. 7 at ¶ 8. Dkt. 1 at ¶ 24.

**D.      Immigration Court Proceedings**

On December 15, 2025, Petitioner filed an initial request for bond redetermination with the immigration court in Florida. Dkt. 7 at ¶ 9; Dkt. 1-1 at 2–16. In support of that request, Petitioner submitted documentation including immigration records, United States birth certificates for Petitioner's children, sponsorship letters and affidavits from Petitioner's primary and alternate sponsor, character reference letters and notarized affidavits, an arrest report for her then-pending misdemeanor charge, family photographs with captions, and a business annual report. Dkt. 1-1 at 17, 19–61. On December 22, 2025, an Immigration Judge ("IJ") issued an

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 4

order indicating that the bond request was withdrawn due to Petitioner's transfer from the Orlando Immigration Court's jurisdiction. Dkt. 7 at ¶ 9.

On December 29, 2025, Petitioner filed a subsequent bond redetermination request with the Tacoma Immigration Court. Dkt. 7 ¶ at 10. On January 6, 2026, Petitioner appeared for a bond hearing before an IJ, who denied bond in a checkbox order indicating only that bond was "denied" and "ability to pay considered." Dkt. 1-1 at 62–63; Dkt. 7 at ¶ 10; Dkt. 1 at ¶ 27. In later filings with the immigration court, Petitioner represented that the IJ denied bond based on concerns regarding danger to the community and ostensibly relying upon the charge for which she was arrested and that was later dismissed. Dkt. 1-1 at 68–69, 80–81.

On February 3, 2026, Petitioner filed a request for bond redetermination, asserting materially changed circumstances and submitting evidence including documentation of the dismissal of her criminal charge, lack of criminal record, and further materials addressing her community ties and compliance with immigration proceedings. Dkt. 1 at ¶¶ 29–30; Dkt. 1-1 at 65–71; Dkt. 7 at ¶ 11. A day later, the IJ denied the request in another checkbox order, stating there were "no materially changed circumstances" under 8 C.F.R. § 1003.19(e). Dkt. 1-1 at 76–77; Dkt. 7 at ¶ 11; Dkt. 1 at ¶ 30.

On February 20, 2026, Petitioner filed another request for bond redetermination, again submitting evidence concerning her lack of criminal or violent history, her family and community ties, and compliance with immigration proceedings. Dkt. 1 at ¶ 31; Dkt. 7 at ¶ 12; Dkt. 1-1 at 78–87. Approximately two weeks later, the IJ denied the request without a hearing in a checkbox order, stating that Petitioner's "application for asylum, withholding of removal, and Convention Against Torture were denied. He [sic] was ordered removed. The court does not find favorable changed circumstances." Dkt. 1-1 at 88–89; Dkt. 7 at ¶ 12; Dkt. 1 at ¶ 33.

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 5

**E.      Removal Proceedings and Current Posture**

On March 4, 2026, the IJ held an individual calendar hearing on Petitioner's application for asylum. Dkt. 1 at ¶ 32; Dkt. 7 at 13.  Petitioner requested a continuance to obtain additional documentation, which was denied. Dkt. 1 at ¶ 32. The IJ then denied all forms of relief and ordered Petitioner removed to Venezuela. Dkt. 7 at ¶ 13; Dkt. 1 at ¶ 32.

On March 9, 2026, Petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA"), which remains pending. Dkt. 7 at ¶ 14. Respondents state that, because her removal order is not administratively final, Petitioner is subject to discretionary detention under 8 U.S.C. § 1226. Dkt. 7 at ¶ 15.

## II.      PROCEDURAL BACKGROUND

Petitioner initiated this action on March 21, 2026, by filing a federal habeas Petition and supporting evidence. Dkts. 1, 1-1. Respondents filed a Return and supporting declaration on April 6, 2026. Dkts. 6, 7. Petitioner filed a timely Reply and, thereafter, notified the Court of supplemental authority in support of her Petition. Dkts. 8, 9. Thus, this matter is now fully briefed and ready for consideration by the Court.

## III.      HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 6

## IV.      DISCUSSION

In her Petition, Petitioner asserts various theories arguing why her continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution. First, Petitioner alleges her continued detention has no reasonable relation to a legitimate immigration purpose (Count I). Dkt. 1 at 21–22. Second, she alleges the IJ's bond determinations were not supported by evidence that, as a matter of law, could demonstrate risk of dangerousness or of flight (Counts II and III). *Id.* at 22. And third, she alleges that various procedural defects pervaded her bond proceedings (Count IV). *Id.* at 23–24. Petitioner also asserts that she should not be required to exhaust administrative remedies before seeking federal habeas relief from her current detention. *Id.* at 16–21.

Respondents counter that the IJ's bond determinations were lawful and not an abuse of discretion and that any challenges to the manner in which the IJ weighed the evidence in Petitioner's case fall outside the Court's subject matter jurisdiction. Dkt. 6 at 7–10.  Respondents also contend that Petitioner's challenges to the IJ's bond determinations should be dismissed for failure to exhaust administrative remedies available through the BIA. *Id.* at 5–7.

As set forth below, the Court finds that the IJ abused their discretion and violated Petitioner's due process rights in refusing to consider clear evidence of materially changed circumstances, which is a matter that falls squarely within the subject matter jurisdiction of this Court. In reaching this conclusion, the Court waives the prudential exhaustion requirement in light of Petitioner's individualized showing of irreparable harm as permitted by *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). The Court also does not reweigh evidence and adheres closely to recent decisions reviewing IJs' bond determinations for abuse of discretion reached within this and other federal district courts.

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 7

**A.      Subject Matter Jurisdiction**

In general, the Court does not have jurisdiction to review discretionary bond decisions. On this point, 8 U.S.C. § 1226(e) provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

"That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the [immigration judge's] discretionary bond determination was not reviewable in federal court..., we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [a noncitizen's] agency proceedings, including any claimed due process violation."). Accordingly, "a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018) (collecting cases).

In the instant Petition, Petitioner argues her current detention is unconstitutional because the IJ's determinations on her requests for bond did not further a legitimate immigration purpose, the IJ relied on evidence that could not support bond denial as a matter of law, and procedural defects pervaded her bond proceedings. Dkt. 1 at 21–24. Thus, Petitioner is not merely challenging the IJ's discretionary judgment as Respondents contend. Dkt. 6 at 7–10. Instead, Petitioner challenges the legality of the IJ's decisions and her resulting detention and, as such, her claims fall squarely within this Court's subject matter jurisdiction.

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 8

**B.    Prudential Exhaustion**

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n. 3 (9th Cir. 2011). That is, the necessity of administrative exhaustion in § 2241 actions is governed by sound judicial discretion. *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992), *superseded by statutory amendment as noted in Booth v. Churne*r, 532 U.S. 731, 738 (2001). Nevertheless, "[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro–Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez–Vargas v. Gonzales*, 548 U.S. 30, 35–36, n. 5 (2006).

To determine whether prudential exhaustion is appropriate, courts consider the following factors, often referred to as the *Puga* factors: (1) whether "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision," (2) whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme," and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). That is, under the *Puga* factors, courts should require administrative exhaustion where it would aid in developing a more complete factual record for federal judicial review, prevent forum shopping, and conserve federal judicial resources by permitting agencies to correct their own mistakes where they are likely to do so. *Id.*

Even if the *Puga* factors weigh in favor of prudential exhaustion, a petitioner may avoid the requirement by demonstrating any one of the following *Laing* factors applies in their case: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 9

proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see Aden v. Nielsen*, No. 2:18-cv-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies.") (citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1000 (N.D. Cal. 2018)).

In this case, even if exhaustion were required, waiver of that requirement is warranted by at least one of the *Laing* factors. Namely, Petitioner has shown that irreparable injury would result if she were to continue in immigration detention while pursuing administrative remedies through the BIA. *See Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.").

Petitioner is the primary caregiver for her two young children. Dkt. 1 at ¶ 17. She is currently going through divorce and custody proceedings, and she has submitted evidence showing her inability to appear due to continued confinement that could negatively affect the outcome of those proceedings. *Id.* at ¶ 26; Dkt. 1-1 at 113. Although Respondents contend that Petitioner's arguments regarding irreparable harm are "without merit," they do not actually dispute the factual underpinnings of Petitioner's argument.

Thus, the Court concludes that Petitioner's uncontested factual submissions are sufficient to show irreparable harm and warrant waiver of the exhaustion requirement. *See, e.g., Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (exhaustion requirement

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 10

waived upon petitioner's showing that continued detention would interfere with her ability to present defense in ongoing criminal prosecution and to care for her 9-year-old daughter).

## C.    Abuse of Discretion

Habeas courts review immigration judge's bond determinations for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 779, 784–785 (9th Cir. 2024); *Anyanwu v. Bondi*, No. 25-cv-995-JLR-MLP, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025*), report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). When reviewing a determination for abuse of discretion, a court may not reweigh evidence but may determine whether the IJ applied the correct legal standard. *Martinez*, 124 F.4th at 785 (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (pointedly concluding that, in reviewing discretionary bond determinations, federal district courts are "not required to countenance a sham").

The following are factors considered by IJs in making discretionary bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020). Even where bond is initially denied, a noncitizen subject to discretionary detention under § 1226(a) may obtain a new bond determination whenever they experience a material change in circumstances. 8 C.F.R. § 1003.19(e); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 11

Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations. *See e.g., W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, *3–4 (W.D. Wash. Jan. 30, 2026); *Soriano v. Hernandez*, --- F.Supp.3d ----, 2026 WL 969764, *4–6 (W.D. Wash. Apr. 10, 2026); *Zambrano-Vazquez v. Noem*, No. 26-cv-122-RSM, 2026 WL 657129, at *4 (W.D. Wash. Mar. 9, 2026); *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, *6–7 (S.D. Cal. Apr. 16, 2026); *Ortega-Rangel,* 313 F. Supp. 3d at 1004–05; *Garcia v. Hyde*, --- F.Supp.3d ----, 2025 WL 3466312, at *7–11 (D.R.I. Dec. 3, 2025); *Garcia Ortiz*, 2026 WL 948275, at *3–4.

In this case, the Court concludes that the IJ abused discretion in denying Petitioner's requests for bond redetermination based on materially changed circumstances. Central to this conclusion are the absence of a reasoned explanation supporting the IJ's decisions, the absence of any record demonstrating the IJ meaningfully engaged with the governing legal standard or evidence presented, and the IJ's apparent refusal to recognize a material change in circumstances clearly demonstrated by the available record.

Federal district courts sitting in habeas review of immigration bond determinations have considered these and similar circumstances in finding abuse of discretion. *See e.g., Velasquez*, 2026 WL 1042479, *6–7 (noting that the IJ did not "consider or apply" the required *Guerra* factors and "failed to consider all relevant evidence as required by due process"); *Zambrano-Vazquez*, 2026 WL 657129, at *4 (concluding that "the Government's arrest and detention of Petitioner with what appears no reasoning nor process violates Petitioner's due process protections under the Constitution"); *Ortega-Rangel*, 313 F. Supp. 3d at 1004–05 (concluding IJ abused discretion in denying bond based on pending criminal charge that, without more, did not

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 12

serve as "probative and specific" evidence of criminal activity); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559 (W.D. Wash. Apr. 14, 2026) (considering insufficient record and reasoning by IJ in finding abuse of discretion); *Vasquez Lopez v. Hernandez*, --- F.Supp.3d ----, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026) (considering insufficient explanation for whether and how IJ considered the required factors and weighed evidence).

In this case, the IJ's bond determinations were issued through a series of checkbox orders that do not articulate the basis for the decision or reflect a meaningful application of the governing legal standards to the facts of Petitioner's case. *See* Dkt. 1-1 at 62–63, 76–77, 88–89. The absence of a reasoned decision by the IJ also limits the Court's ability to discern the grounds on which bond was initially denied. In a motion for redetermination of the IJ's initial bond decision, however, Petitioner represented that the IJ denied bond based on concerns regarding danger to the community arising from a then-pending misdemeanor charge. Dkt. 1-1 at 68–69. As addressed in Section I above, the Court assumes Petitioner's pending misdemeanor charge was the basis for the IJ's initial bond denial decision.[2]

However, in making this assumption, the Court observes that there is no further evidence in the record upon which a reasonable jurist could conclude that Petitioner is a danger to the community. And the dismissal of the pending criminal charge, presumably the primary if not exclusive justification for detention, would necessarily require some additional explanation.

Petitioner has two young children who are citizens of, and therefore rooted in, the United States. Dkt. 1 at ¶ 17. She also has other family connections in the United States, including a brother residing in Florida, and has maintained a stable residence while operating a small business in the community. *Id.* at ¶¶ 16, 18. Petitioner has further submitted evidence reflecting

---

[2] The Court need not decide whether the IJ abused discretion in the initial bond denial because the IJ's subsequent refusals to revisit the bond decision constitute an abuse of discretion.

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 13

community support, including sponsorship letters, character affidavits, and documentation of her business and family life. Dkt. 1-1 at 17, 19–61. The record also reflects that Petitioner has no criminal convictions and that she has not failed to appear for immigration proceedings. Dkt. 1 at ¶¶ 21, 34–35 These longstanding familial, economic, and community-based connections reflect significant equities bearing on her likelihood of appearance and stability in the community.

Next, even assuming that the IJ's initial denial of bond rested on the existence of a pending criminal charge, this charge was later dismissed for lack of evidence, with no conviction, adjudication, or finding of guilt. Dkt. 1 at ¶¶ 21, 28; Dkt. 1-1 at 75. Following that dismissal, Petitioner sought bond redetermination asserting materially changed circumstances in accordance with 8 C.F.R. § 1003.19(e). Dkt. 1 at ¶¶ 29–31; Dkt. 1-1 at 65–71, 78–87; Dkt. 7 at ¶¶ 11–12. The IJ nevertheless denied reconsideration, stating first that there were "no materially changed circumstances," and later stating that Petitioner's applications for relief from removal were denied and there were no "favorable changed circumstances." Dkt. 1-1 at 76–77, 88–89.

While a checkbox order may suffice in some instances, such an order in this context does not provide adequate due process. On this record, the Court finds that the IJ's unexplained conclusion that no materially changed circumstances existed lacks a rational basis. Where the only identified factor supporting bond denial—namely, a pending criminal charge—was dismissed, the factual landscape before the IJ changed in a manner directly relevant to their prior bond determination. The IJ's failure to acknowledge or engage with evidence of that change, coupled with the absence of any articulated reasoning, constitutes an abuse of discretion.

This conclusion is consistent with decisions from other federal district courts addressing the consideration owed to a noncitizen's changed circumstances and the status of criminal allegations. In *W.T.M.*, the court found that an IJ violated due process in determining that a noncitizen posed a flight risk based solely on a recalled bench warrant where no charges were

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 14

pending and other evidence in record supported release. 2026 WL 262583, at *3–4. Similarly, in *Garcia*, the court held that reliance on an inactive arrest warrant to support a flight risk finding was an abuse of discretion and violation of the noncitizen's due process rights. 2025 WL 3466312, at *7–11. And in *Zambrano-Vazquez*, the court concluded that an IJ abused discretion and violated due process by revoking bond despite there being no evidence of a material change in circumstance to warrant the new decision. 2026 WL 657129, at *3.

These cases also reflect a more basic principle: bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case. Where those minimum requirements are not met, a resulting bond denial decision violates due process.

In sum, any reasonable and impartial decisionmaker would have concluded that dismissal of Petitioner's criminal charges was a materially changed circumstance warranting a new bond determination. The IJ's contrary conclusion here without explanation—which bore no discernible rational relationship to the legal standards, facts, or evidence—and continued denial of bond was an abuse of discretion and violation of Petitioner's procedural due process rights.

## V.    REMEDY

The Court next considers the appropriate remedy. In this area, habeas courts have "a fair amount of flexibility." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 15

ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

The Court finds that an order of conditional release following a prompt bond hearing to be the appropriate remedy in this case. In crafting this remedy, the Court concludes Respondents should be granted the opportunity to cure the legal errors in Petitioner's bond proceedings through a remedial hearing. The Court observes that the primary legal defects in this case concern the IJ's refusal to *reconsider* Petitioner's bond eligibility when provided with clear evidence of her materially changed circumstances. Moreover, because a written record of the IJ's reasoning is not available for the Court's review, it is not clear that further immigration bond proceedings would be futile or incapable of redressing Petitioner's due process injuries.

Thus, before requiring her unconditional release from immigration detention, the Court provides Respondents with the opportunity to support Petitioner's continued detention at a prompt bond redetermination hearing held before an IJ. At that remedial bond hearing, Respondents must provide clear and convincing evidence demonstrating that, if released, Petitioner would pose a risk of danger to the community and that no reasonable conditions of supervision would mitigate that risk. *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026) (noting that clear and convincing evidence standard was appropriate when fashioning a remedy, even if such a standard were not required "as a general matter"); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *4 (W.D. Wash. Mar. 3, 2026) (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation). Further, to remedy the particular injuries in this case, the IJ shall prepare a written, contemporaneous record of the bond decision, which outlines their reasoning, the

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 16

evidence considered, and application of the appropriate legal standards to the facts of Petitioner's case.

### VI.    CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. 1) is **GRANTED IN PART** and the Court **ORDERS** the following:

(1)    Respondents **SHALL** provide Petitioner Vanessa Soto Gimenez a bond hearing before an immigration judge **within seven days of this Order** at which the government bears the burden of proof by clear and convincing evidence that, if released, Petitioner poses a risk of danger to the community and that no reasonable conditions of supervision would mitigate that risk;

(2)    Respondents **SHALL** file a declaration with the Court confirming that Petitioner received a bond hearing complying with this Order or otherwise confirming her release **within eight days of this Order.**    With said declaration, Respondents shall also submit a copy of the IJ's written bond decision; and

(3)    If Petitioner is released, Respondents **SHALL** return to Petitioner any personal property, including personal identification documents (other than a passport) and employment authorization documents.

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 29th day of April, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING FEDERAL HABEAS
PETITION IN PART - 17